UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.

                                  Plaintiff,

REPORT AND
RECOMMENDATION
06 CV 04735 (CBA) (RML)

    -against-

PUEBLA'S GROCERY, INC.
d/b/a PUEBLA'S RESTAURANT
and ANGEL L. CHIMBO,

                                  Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated April 24, 2007, the Honorable Carol Bagley Amon, United States District Judge, referred plaintiff's motion for a default judgment against defendants Puebla's Grocery, Inc. d/b/a Puebla's Restaurant ("Puebla's Grocery") and Angel L. Chimbo ("Chimbo") (collectively "defendants") to me for a Report and Recommendation. For the reasons stated below, I respectfully recommend that the default judgment be granted as to defendant Puebla's Grocery only, that plaintiff be awarded $4,396 in damages, and that plaintiff's request for attorney's fees and costs be denied. However, before the default judgment is granted, the Clerk of Court must note the defendant's default.

## BACKGROUND AND FACTS

        Plaintiff Garden City Boxing Club, Inc. ("plaintiff" or "Garden City Boxing") brought this action in August 2006, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1996). Plaintiff alleges that the defendants procured or received pay-per-view cable television services without authorization or consent. (Complaint, dated Aug. 28, 2006 ("Compl."), ¶¶ 15, 19.) After the defendants failed to appear or answer in

this action, plaintiff moved for the entry of a default judgment. On April 24, 2007, Judge Amon referred plaintiff's motion to me for a Report and Recommendation. By order dated April 30, 2007, I noted that plaintiff had filed a submission in support of its motion, and advised plaintiff that it was free to supplement its submission with further documentation of its claims for damages and attorney's fees, including contemporaneous time records, on or before June 1, 2007. Plaintiff did not do so. I also directed defendants to serve and file any opposition on or before August 3, 2007. Defendants did not file any opposition, and the court has received no communication from them.

An affidavit of service indicates that Puebla's Grocery was served with a copy of the summons and complaint. (See Affidavit of Steven Avery, sworn to Oct. 25, 2006.) No affidavit of service is on record indicating that Chimbo was served with a copy of the summons and complaint. The Clerk of Court has not noted either defendant's default. Having reviewed the papers submitted by plaintiff in support of its application, I respectfully recommend that the Clerk of Court be directed to enter the default of Puebla's Grocery and that plaintiff's motion for a default judgment be granted as to that defendant. However, I am unable to recommend that a default judgment be entered against defendant Chimbo because plaintiff has failed to demonstrate proper service of the summons and complaint with respect to that defendant.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585,

587 (E.D.N.Y. 1997). Plaintiff's allegations with respect to Puebla's Grocery are as follows:

Plaintiff is a California corporation that owns the commercial distribution rights to the September 13, 2003 De La Hoya/Mosley II pay-per-view boxing event ("the Event"). (Compl. ¶ 8.) The Event was broadcast by closed circuit television. (Id.) For a fee, a customer could receive an unscrambled signal and display the Event to its patrons. (Id. ¶¶ 9-12.) Plaintiff does not list the minimum licensing fee for commercial establishments in its complaint, its legal memorandum, or its affidavit.

Defendant Puebla's Grocery is a business located at 99-01 Northern Boulevard, Corona, New York (the "Establshiment"). (Compl. ¶ 5.) Plaintiff sent an independent auditor, Tarek A. Othman, to the Establishment during the broadcast of the Event. (Affidavit of Tarek A. Othman, sworn to Sept. 16, 2006 ("Othman Aff.").) At 10:05 p.m., Othman observed one television showing the Event with approximately twenty patrons in the Establishment. (Id.) Defendant Puebla's Grocery had not contracted with plaintiff to receive or display the Event; nor was it otherwise authorized to do so. (Compl. ¶¶ 13, 19.) Plaintiff asserts that defendant Puebla's Grocery willfully committed a wrongful act to receive the interstate communication of the Event. (Id. ¶¶ 15-17.)

Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), $100,000 under § 605(e)(3)(C)(ii), $10,000 under § 553(3)(A)(ii), $50,000 under § 553(3)(B), and full costs, including reasonable attorney's fees, under § 605(e)(3)(B)(iii). (Compl. at 9, ¶¶ A-F.)

## DISCUSSION

1. Statutory Damages

Plaintiff appears to be seeking full statutory damages under *both* § 553 and § 605,[1] *i.e.*, double recovery. (Id.) However, this would violate "the general principle that precludes double recovery." Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 452 (2d Cir. 1998). Moreover, the Second Circuit has held that where a defendant is found to have violated both of these statutes, the court should award damages pursuant to § 605. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993); cf. International Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996); see also Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996).

Therefore, if plaintiff's allegations demonstrate that defendants violated § 605 of the Communications Act, damages are properly assessed under that section.[2] Section 605(a) states in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving

---

[1] Both statutes permit an aggrieved party to elect to recover either (1) actual damages and lost profits, or (2) statutory damages (see 47 U.S.C. §§ 605(e)(3)(C)(i); 553(c)(3)(A)), but § 605 contains a more severe statutory damages provision. Specifically, 47 U.S.C. § 553(c)(3)(A)(ii) allows a party to recover for "*all* violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just," while 47 U.S.C. § 605(e)(3)(C)(i)(II) allows for statutory damages for "*each* violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." (emphasis added.)

[2] Since I find that the defendant did violate § 605, there is no need for a discussion of the requirements for an award of damages under § 553.

> any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law. See 47 U.S.C. § 605(d)(3).

Section 605 further states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i). Due to the difficulty in determining the full extent of profits lost and additional damages sustained, Garden City Boxing has elected to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), which allows for statutory damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."

The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Most courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 WL 1488110, at *2 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); Googies Luncheonette, 77 F. Supp. 2d at 490 (same); New Contenders, Inc. v. Diaz Seafood Corp., No. 96 CIV. 4701, 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron under § 605); Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., slip op., No. 95 CV 1422 (E.D.N.Y. Sept. 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge). As one court has explained, the per-patron valuation "is

-5-

based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Googies Luncheonette, 77 F. Supp. 2d at 490. See also Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3. (E.D.N.Y. Sept. 20, 2005) (explaining that the per-patron calculation is based on the assumption that each patron would have paid to view the prize fight from home had he or she not had access to a free broadcast at a neighborhood establishment). "Plaintiff is thus fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." Googies Luncheonette, 77 F. Supp. 2d at 490.

Indeed, numerous decisions in this district have awarded damages to this plaintiff based on the residential fee multiplied by the number of patrons in the establishment. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10, representing $54.95 for each of the 18 patrons that the investigator observed in the establishment during the DeLaHoya/Hopkins event); Bello, 2005 WL 2496062, at *3 (recommending statutory damage award of $2,198, representing $54.95 for each of the 40 patrons who could have viewed the DeLaHoya/Hopkins event based on the establishment's capacity);[3] Garden City Boxing Club v.

---

[3] In using the establishment's capacity, rather than the number of patrons the investigator observed, the court explained that it was "entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity." Bello, 2005 WL 2496062, at *3. I find this analysis speculative and prefer to hold the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who were present when the Event was shown. See Garden City Boxing Club, Inc. v.
(continued...)

Morales, No. CV-05-0064, 2005 WL 2476264, at *6 (Oct. 7, 2005) (recommending statutory damage award of $3,297, representing $54.95 for each of the 60 patrons who witnessed the event). Plaintiff provides no documentation as to what amount a residence would have paid for the Event. Based on the amounts indicated in the above cases, all involving Garden City Boxing, I will assume that $54.95 was the residential charge for the Event.

I find the per-patron valuation appropriate here. According to the report of the investigator, there were approximately twenty patrons present during the broadcast of the Event. (Othman Aff.) Twenty multiplied by $54.95 leads to an award of $1,099. I therefore recommend that plaintiff be awarded $1,099 in statutory damages under 47 U.S.C. § 605.

2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements" (Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)), and is established by the fact that an event is broadcast without authorization. See Googies

---

³(...continued)
Perez, No. 05 CV 3713, 2006 WL 2265039, at *6 (E.D.N.Y. Aug. 8, 2006) (rejecting the approach in Bello because "although it is entirely possible that more patrons were there before or after the auditor's visit, it is also entirely possible that there were not.") Moreover, plaintiff has not provided the actual capacity of the Establishment, but only an estimate made by an individual who was there for less than ten minutes. (See Othman Aff.)

Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01-CV-6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

In this case, Puebla's Grocery never contracted for the right to broadcast the Event and, accordingly, was not authorized to intercept, receive or transmit communication of the Event. (See Compl. ¶¶ 13, 19.) In order to have received the Event, someone connected with the Establishment had to have engaged in some deliberate act. (Id. ¶ 15, 32.) Indeed, since the transmission of the Event was electronically coded and the Establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (Id. ¶ 31.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

On the other hand, none of the four willfulness factors described above is present in this case. Plaintiff does not offer evidence that Puebla's Grocery has engaged in any other pay-per-view theft violations. Plaintiff's investigator was not charged a cover fee to enter defendant's establishment and the Event was shown on only one television set. (See Othman

Aff.) Further, the plaintiff does not allege that the defendants advertised the display of the Event in order to entice customers into the Establishment. (Id.)

In light of the circumstances surrounding the display, I respectfully recommend that an additional award of $3,297 in enhanced damages, *i.e.*, a factor of three times the per-patron amount, be assessed against Puebla's Grocery for willful violation of the Communications Act. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *4 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts"); Googies Luncheonette, 77 F. Supp. at 491 (imposing additional damage award of $3,000, three times the base award, against defendant with no record of any other theft of cable services or other intellectual property, to "serve as a reasonable deterrent against future violations"); see also Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 112 (imposing enhanced damages award of $5,000 where defendant displayed boxing match to approximately seventy-five patrons on one television set); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (increase of five times the base award for willful acts).

### 3. Attorney's Fees and Costs

As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). An award of full costs, including reasonable attorney's fees, to the prevailing party is mandated for a violation of § 605. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993); Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996). In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time

records specifying "relevant dates, time spent and work done." Broadcast Music, 919 F. Supp. at 661 (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). The court, which has "considerable discretion," then considers the billing records and calculates a "presumptively reasonable fee" – that is, a reasonable hourly rate multiplied by a reasonable number of hours. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 2007 WL 2004106, at *7 (2d Cir. July 12, 2007).

In the present case, plaintiff did not request any specific amount or submit contemporaneous time records to support the request. I therefore recommend that plaintiff be awarded no attorney's fees. See Kingvision Pay-Per-View Ltd. v. Hansen, No. 02 Civ. 6587, 2004 WL 744230, at *4 (S.D.N.Y. Apr. 5, 2004) (denying attorney's fees where there was "no documentation concerning attorney's fees, and no basis for the Court to recommend an award."); Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (same); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (denying counsel's request for fees due to lack of proper documentation). See also ISM Sports, Inc. v. Lemonia Gyro & Souvlaki, Inc., No. 04CV2333, 2005 WL 1861308, at *2 (E.D.N.Y. July 28, 2005) (admonishing counsel for failing to submit proper documentation of attorney's fees and denying late request). Likewise, plaintiff did not request any specific amount or submit any evidence to support the request for costs associated with the litigation. Therefore, I recommend that no costs be awarded.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff be awarded $4,396 in damages and that plaintiff's request for attorney's fees and costs be denied. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Amon and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/S/

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
November 5, 2007